

April 16, 2020

**VIA ECF AND E-MAIL**

Honorable Analisa Torres
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15D
New York, New York 10007-1312

      **Re: Tapestry, Inc. v. Niche Corporation and Jayesh Jesalpura**
          **Civil Action No. 19 Civ. 11777 (AT) (KNF)**

Dear Judge Torres:

On behalf of Plaintiff Tapestry, Inc. ("Tapestry"), we oppose Mr. Jesalpura's letter motion seeking to disqualify counsel for Tapestry, Arthur D. Middlemiss, and the law firm of Lewis Baach Kaufmann Middlemiss PLLC ("LBKM"). The motion merits short shrift.

Distilled, Tapestry hired LBKM to help it investigate potential employee misconduct. As a result, Tapestry fired Mr. Jesalpura and commenced the instant lawsuit against him and Niche Corporation ("Niche") for the discovered misconduct. Absent relevant support, Mr. Jesalpura invokes the "advocate-witness" rule to suggest that it is a *per se* ethical violation for an attorney involved in an internal investigation to be involved in subsequent litigation—an absurd result. Mr. Jesalpura also claims that alleged misconduct by Mr. Middlemiss, to wit, banging a table, turning red in the face, speaking loudly, and uttering the word "pissed," somehow tainted the interview, supports his "advocate-witness" claim, and independently warrants his removal from the case. Mr. Jesalpura's gambit unnecessarily delays the case, would deprive Tapestry of its chosen counsel, and should be summarily rejected.

    **I.   The Testimony of Mr. Middlemiss is Not Necessary in This Matter.**

As a general matter, "[m]otions to disqualify opposing counsel … are viewed with disfavor," *Paramount Comms., Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994), as they have "an immediate adverse effect on the client by separating him from counsel of his choice, … are often interposed for tactical reasons…and inevitably cause delay." *Hecklerco, LLC. v. Yuuzoo Corp. Ltd.*, 2016 WL 7742783, at *2 (S.D.N.Y. Dec. 16, 2016) (internal citations and quotations omitted); *see also Matter of Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979) (the Second Circuit is "loathe to separate a client from his chosen attorney where the alleged misconduct does not prejudice an opposing party and taint the litigation in which he is appearing").



April 16, 2020
Page 2

"Disqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of the strong potential for abuse." *Paramount Comms.*, 858 F. Supp. at 394; *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) ("Rule 3.7 lends itself to opportunistic abuse."). The party seeking disqualification bears a "heavy burden" (*Sea Tow Int'l, Inc. v. Pontin*, 2007 WL 4180679, at *3 (E.D.N.Y. Nov. 19, 2007); *Hecklerco*, 2016 WL 7742783, at *5) of demonstrating "that it is likely that the testimony to be given by the witness is necessary and that it is substantially likely to be prejudicial to the party represented." *Forrest v. Par Pharm., Inc.*, 46 F. Supp. 2d 244, 247 (S.D.N.Y. 1999), *aff'd* 1 F. App'x 83 (2d Cir. 2001).

Notwithstanding Mr. Jesalpura's insistence otherwise, Mr. Middlemiss's testimony is not necessary, and there is certainly no reason to believe it would be prejudicial to Tapestry. Necessity "cannot be met with mere speculation," and "if the facts to which the lawyer would testify could be elicited from another witness, or the lawyer's testimony would be cumulative of other evidence," then disqualification is inappropriate. *Sea Tow*, 2007 WL 4180679, at *3; *see also Hecklerco*, 2016 WL 7742783, at *4 ("Where an attorney's testimony would be cumulative or corroborative of that provided by other witnesses, the testimony cannot be said to be necessary…."); *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) ("[A] lawyer who could provide only cumulative testimony may act as trial counsel."). Simply stated, "the availability of other witnesses is essentially fatal to the 'necessity' prong of the disqualification inquiry." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 420 (S.D.N.Y. 2015) (collecting cases).

Here, it is uncontested that LBKM personnel, including Mr. Middlemiss, helped Tapestry conduct an internal investigation into Mr. Jesalpura's misconduct. LBKM personnel reviewed Tapestry records, researched Niche's corporate history, and participated in interviews with Tapestry personnel, including Mr. Jesalpura. Mr. Middlemiss did not conduct Mr. Jesalpura's interview alone; Tapestry employee Dan Hafford, Vice President, Global Head of Asset Protection, was present and could testify at trial if such testimony is required by either Tapestry or Mr. Jesalpura. But other than the employee interviews, neither Mr. Middlemiss nor any other LBKM personnel were involved in the matter's underlying facts.

Indeed, from Mr. Middlemiss, the crucial evidence Mr. Jesalpura claims to need—*i.e.* "the knowledge people within (or even outside) [Tapestry] had regarding Mr. Jesalpura's connection to Niche" (Mot. at 7) and information derived from Niche's "financial and corporate records, … countless invoices and other business records" (*id.* at 8)—is not only unnecessary but would likely be inadmissible. As to the former, Mr. Middlemiss's testimony would only consist of hearsay. *See, e.g.*, *Pacheco v. Ross Architects, P.C. v. Mitchell Assocs., Architects*, 2009 WL 1514482, at *8 (N.D.N.Y. May 29, 2009) (questioning whether attorney's "hearsay-laden testimony … would be even admissible in this case, let alone necessary"). It would also be protected by the attorney client and work product privileges, as everything he learned was from his client or in the course of gathering the facts that led to the initiation of this matter. As to the latter, Mr. Middlemiss's "opinion" about what the corporate records show would be inadmissible. Fact witnesses are better suited to provide non-hearsay testimony, and the underlying records, invoices, and other



documents speak for themselves.  *See, e.g.*, *Forrest*, 46 F. Supp. 2d at 248 (denying motion to disqualify counsel where plaintiff was better suited than anyone to testify for information sought by defendant); *Sea Tow*, 2007 WL 4180679, at *4 (attorney testimony cumulative where "all of the information defendants seek can be obtained" either from defendant seeking disqualification or representatives of the company).

The cases Mr. Jesalpura cites are inapposite, as they involve matters where the lawyer was inextricably involved in the underlying facts.  *See, e.g.*, *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 579-81 (S.D.N.Y. 2019) (BSF, alleged to have conspired with its client, was "immersed in the facts"); *Gleason v. Zocco*, 941 F. Supp. 32, 35 (S.D.N.Y. 1996) (attorney had "extensive personal involvement in every aspect of the underlying controversies"); *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015) (attorney had substantial role in underlying facts, including as signatory on contracts); *Farrell Family Ventures, LLC v. Sekas & Assoc., LLC*, 863 F. Supp. 2d 324, 335 (S.D.N.Y. 2012) (attorney impleaded as third-party defendant); *Gorbaty v. Wells Fargo Bank*, 2011 WL 318090, at *2 (E.D.N.Y. Feb. 1, 2011) (attorney was both defendant's husband and co-borrower on loans at issue).

Notably, Mr. Jesalpura claims (absent any support) that it is a "fundamental tenet, particularly in the employment law arena that an attorney should not be involved in underlying investigations when she intends to function as counsel for that client in a litigation stemming from that inquiry."  Mot. at 8.  There may be situations in which it is relevant to a lawsuit how an internal investigation was conducted, *e.g.*, when an employer seeks to avoid liability in a Title VII case for harassment or discrimination.  *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1994); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  This is not such a situation; here, the "impartiality" of the investigation is irrelevant.  Mr. Jesalpura either did what was alleged or he did not.  How the investigation was conducted or Mr. Middlemiss's conduct therein is simply not relevant to whether Mr. Jesalpura breached his contract and violated his duties to the company.

Likewise, Mr. Jesalpura's prejudice claim lacks merit.  "Prejudice exists where the testimony would be sufficiently adverse to the factual assertions or account of events offered on behalf of the client."  *Hecklerco*, 2016 WL 7742783, at *5 (internal citations and quotations omitted).  Mr. Jesalpura's assumption that Mr. Middlemiss would provide testimony prejudicial to Tapestry is speculative; Tapestry has no concern that Mr. Middlemiss would provide prejudicial testimony.

Nor has Mr. Jesalpura committed to unquestionably and irrevocably call Mr. Middlemiss as a witness.  To demonstrate prejudice where, as here, "the attorney's adversary is the only party that intends to call the attorney as a witness, the adversary bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial."  *Hecklerco*, 2016 WL 7742783, at *5 (internal citations and quotations omitted).  Mr. Jesalpura fails to meet that burden.  He does not set forth what he believes Mr. Middlemiss would say that no one else could say.  He does not even try to show that Mr. Middlemiss would give testimony at variance with Mr. Jesalpura or Tapestry's Global Head of Asset Protection, Mr. Hafford, or about Mr. Jesalpura's interview—if that interview were to be the



subject of testimony at trial. All Mr. Jesalpura offers is mere speculation that Mr. Middlemiss's testimony would somehow contradict that of Tapestry employees. Mot. at 7.

In any event, even if it warranted consideration at all, Mr. Jesalpura's invocation of the witness-advocate rule on the grounds of prejudice is entirely premature. "As the [rule] makes pellucid, the lawyer may continue to represent the client until such time as the client is prejudiced." *Adams v. Vill. of Keesville*, 2008 WL 3413867, at *12 (N.D.N.Y. Aug. 8, 2008). Indeed, the case Mr. Jesalpura himself cites in support acknowledges that the "witness-advocate rule is concerned with potential prejudice *at trial*." *Nimkoff Rosenfeld & Schecter, LLP v. RKO Props., Ltd.*, 2016 WL 3042733, at *13 (S.D.N.Y. May 24, 2016) (emphasis in original). Where, as here, discovery has not commenced, depositions have not been taken, and it is unclear what prejudice will be suffered by Tapestry if Mr. Middlemiss were to testify, Mr. Jesalpura's motion is underdeveloped. *See, e.g.*, *Pacheco*, 2009 WL 1514482, at *9; *Adams*, 2008 WL 3413867, at *12 ("Without a deposition of the parties to appreciate the orbit of this purported advice and actions of counsel and possible attorney testimony, the motion is underdeveloped."); *Nelson v. Ulster Cty.*, 2007 WL 2288053, at *6 (N.D.N.Y. Aug. 7, 2007) (same).

As Mr. Jesalpura fails to carry the heavy burden of proving necessity and prejudice, secondary considerations—such as whether Tapestry bears any hardship in obtaining new counsel (Mot. at 7)—are not relevant and insufficient alone as a basis to grant disqualification.

Mr. Jesalpura's attempt to disqualify LBKM is governed by "an even stricter test." *Hecklerco*, 2016 WL 7742783, at *5. Disqualification by imputation is an "extreme remedy" that should only be ordered "sparingly," and then only if the movant can show "by clear and convincing evidence that (A) the witness will provide testimony prejudicial to the client, and (B) the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178. "A 'considerably higher showing of prejudice' is required to disqualify a law firm by imputation than is required to disqualify an individual attorney." *Hecklerco*, 2016 WL 7742783, at *5 (*quoting Murray*, 583 F.3d at 179). Mr. Jesalpura's failure to establish grounds for Mr. Middlemiss's disqualification dooms his motion to disqualify LBKM. *See, e.g.*, *Hecklerco*, 2016 WL 7742783, at *13.

But even if Mr. Middlemiss should be disqualified, Mr. Jesalpura's baseless and speculative arguments do not approach the "considerably higher showing of prejudice" required to disqualify a law firm. Mr. Jesalpura fails to explain not only why Mr. Middlemiss would have to be separated from the case (*see, e.g.*, *Rosefield v. Orentreich*, 1998 WL 567750, at *5 (S.D.N.Y. Sept. 4, 1998) (noting that advocate-witness "grounds for disqualification do not concern the imputation of client confidences and the duty of loyalty")) but, even if necessary, why such separation would not be possible. *See, e.g.*, *Am. Tax Funding, LLC v. City of Schenectady*, 2014 WL 6804297, at *5 (N.D.N.Y. Dec. 2, 2014) ("As long as the law firm exercises special care and vigilance, a small firm can erect a suitable and satisfactory quarantine or isolation of an attorney to protect the sharing of confidential information."). Mr. Jesalpura's motion to disqualify LBKM by imputation therefore fails.

Lewis
Baach
Kaufmann
Middlemiss
PLLC

April 16, 2020
Page 5

## II. Tapestry Has Neither Waived the Attorney-Client Nor Work Product Privileges.

Mr. Jesalpura next argues that Tapestry impliedly waived the attorney-client and work product privileges by placing the investigation at issue. The contention lacks merit.

New York delineates narrow parameters for the at-issue waiver, finding that it applies "only when a defense requiring reliance on the advice of counsel is *itself* to be proven by the use of privileged documents." *Gruss v. Zwirn*, 276 F.R.D. 115, 133 (S.D.N.Y. 2011) (emphasis added); *Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 520 (S.D.N.Y. 2017) (denying request for disclosure of communications protected by attorney-client privilege where those communications would not be used as evidence); *see also Deutsche Bank Trust Co. of Am. v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 64 (1st Dep't 2007); *Aiossa v. Bank of Am., N.A.*, 2011 WL 4026902, at *4 (E.D.N.Y. Sept. 12, 2011) ("The fact that an attorney-client communication is relevant to a material issue in a case does not overcome the attorney-client privilege. If it did, the privilege would be eviscerated.").

As the party arguing for a waiver of privilege, Mr. Jesalpura is required make "some showing … that … [Tapestry] *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *Aiossa*, 2011 WL 4026902, at *5 (*quoting In re County of Erie*, 546 F.2d 222, 229 (2d Cir. 2008)) (emphasis in original). He has made no such showing. Tapestry has not claimed that it made the firing decision on the advice of its attorney, nor has it invoked that as a reason to defend against a claim that the firing was inappropriate. Thus, advice of counsel has not been advanced by Tapestry to either support its reasons for firing Mr. Jesalpura nor to defend against a claim of wrongful termination. The only issue for adjudication in connection with Mr. Jesalpura's firing is whether it was appropriate.[1] For this reason alone, all the cases cited in Mr. Jesalpura's motion are inapposite. *See, e.g.*, *U.S. v. Bilzerian*, 926 F.2d 1285, 1292-93 (2d Cir. 1991) (defendant asserted good faith defense, thereby put his knowledge of the law and the source of his knowledge at issue); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) (party's affidavits reflecting witnesses' intent and interpretation of contract waived privilege); *Arista Records, LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 42881, at *9-*10 (S.D.N.Y. Apr. 20, 2011) (advice of counsel placed at issue when party asserted good faith defense); *Herrick Co. v. Vetta Sports*, 1998 WL 637468, at *3 (S.D.N.Y. Sept. 17, 1998) (privilege waived where firm elected to name individual as expert witness for trial).

Thus, while Mr. Middlemiss's communications and work product may be related to the issues in this litigation, their substance and contents are not at issue. *See, e.g.*, *Kleeberg v. Eber*, 2019 WL

---

[1] Mr. Jesalpura also argues that there is no attorney-client privilege because any advice given by Mr. Middlemiss or LBKM was business advice, not legal advice. But neither Mr. Middlemiss nor LBKM was retained to provide business advice. In any event, "[s]o long as any communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters." *Gruss*, 276 F.R.D. at 125 (internal citations and quotations omitted).



2085412, at *8 (S.D.N.Y. May 13, 2019) (defendant's reliance on advice of counsel to effectuate transaction at issue did not waive attorney-client privilege); *Aiossa*, 2011 WL 4026902, at *4 (rejecting argument that documents regarding employer's investigation into employee should be produced because they "go to the heart" of the matter).

For obvious reasons, Mr. Jesalpura has cited and can cite no case that holds that the mere fact that a party to a lawsuit "considered" legal advice in making a decision waives attorney-client privilege or eviscerates work-product privilege. Such an argument would be frivolous. It would be akin to arguing that Mr. Jesalpura's attorney can no longer represent Mr. Jesalpura because, based upon his attorney's advice, he filed a counterclaim alleging wrongful termination. Plainly, more than that is required to eviscerate the attorney-client privilege and work product doctrines.

In any event, even if it warranted consideration, such a claim is premature. At this procedural juncture—before the parties have briefed the merits of defendants' motions to dismiss and well before any discovery requests have been served, much less opposed—the Court need not delve into assertions of privilege that Tapestry has not yet made to any documents. *See, e.g.*, *Paramount Comms.*, 858 F. Supp. at 397 (holding that issue of implied waiver of attorney-client privilege will be revisited at time when defendant seeks to use his attorney's advice to bolster his claims).

### III.  **Mr. Middlemiss Did Not Violate the Rules of Professional Conduct.**

The claim that Mr. Middlemiss violated the Rules of Professional Conduct is without merit. In any event, if Mr. Jesalpura believes he has such a claim, the place to present it is not here. The asserted misconduct—raising his voice, hitting a table, threatening Mr. Jesalpura, and turning red—would have happened before any lawsuit was brought.[2] Rather, Mr. Jesalpura can bring such complaint to the pertinent New York state grievance committee.

For the record, Mr. Middlemiss denies any impropriety. If there is a factual issue necessary for resolution of the motion, Mr. Middlemiss and Mr. Hafford are willing to provide sworn statements regarding the conduct of the interview. But even if Mr. Jesalpura's account of the interview is accurate, he fails to allege that Mr. Middlemiss "crossed the line" (Mot. at 14), as the alleged conduct falls far short of Rule 8.4(d)'s admonition to not engage in conduct that adversely reflects on the lawyer's fitness as a lawyer. *Compare Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (attorney threatened the "legal equivalent of a proctology exam"), *and Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 2968528, at *2-*3 (S.D.N.Y. June 26, 2014) (lawyer stated, "You're an asshole, Dan," to another lawyer, and falsely claimed to have tape recorded other attorney), *with In re Chiofalo*, 78 A.D.3d 9, 10-11 (1st Dep't 2010) (lawyer sent correspondence "riddled with profanities … as well as ethnic slurs, sexist and homophobic remarks"), *and In re Schiff*, 190 A.D.2d 293, 294 (1st Dep't 1993) (counsel was intimidating and

---

[2] Parenthetically, the interview was less than two weeks after Mr. Middlemiss had had a full hip replacement and was using a cane.



abusive and directed vulgar, obscene, and sexist epithets to adversary during deposition). But, as noted above, this is not the forum to make the complaint.

In sum, Mr. Middlemiss did not act improperly. Even if what Mr. Jesalpura claims occurred took place, there is no cause to remove Mr. Middlemiss from the case, and the allegations give no additional weight to Mr. Jesalpura's other arguments.

## Conclusion

For the reasons set forth above, the Court should deny Mr. Jesalpura's motion seeking the disqualification of Mr. Middlemiss and LBKM.

Respectfully,

Jeffrey D. Robinson
(*pro hac vice* admission pending)
Lewis Baach Kaufmann Middlemiss PLLC

Anthony M. Capozzolo
Lewis Baach Kaufmann Middlemiss PLLC

*Attorneys for Plaintiff Tapestry, Inc.*